**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ANGEL JENKINS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

BRIDGES CONSUMER HEALTHCARE, LLC,

Defendant,

---------------------------------------------------------

Civil Action No. ________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, ANGEL JENKINS ("Plaintiff" or "Ms. Jenkins"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, Robert Schonfeld, Esq. of JOSEPH NORINSBERG, LLC, brings this action against BRIDGES CONSUMER HEALTHCARE, LLC ("Bridges" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Websites, https://econugenics.com and https://www.thermacare.com are accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff ANGEL JENKINS is a resident of New York, New York, and is legally blind due to Retinitis Pigmentosa, a progressive retinal degenerative disease that causes severe visual field constriction and substantial central vision loss. As documented in the New York State Office of Children and Family Services Report of Legal Blindness, completed by Dr. Robert Friedman, M.D. of Mount Sinai Morningside hospital on April 12, 2025, Plaintiff meets the statutory definition of legal blindness. Dr. Friedman identified Retinitis Pigmentosa as the cause of her blindness and certified her as legally blind for purposes of registration with the New York

State Commission for the Blind. *(See Exhibit A.)*

2. This action arises from Defendant's failure to make its digital properties accessible to Plaintiff Angel Jenkins and all others similarly situated, which violates the effective communication and equal access requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. These provisions were enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" by "assur[ing] equality of opportunity, full participation, independent living, and economic self-sufficiency."

3. Although styled as an individual action, the injunctive relief that Plaintiff seeks will inure to the benefit of an estimated 2.3 percent of the United States population who report having a visual disability, and to Defendant, who will extend its market reach to this population.

4. For this significant portion of Americans, accessing websites, mobile applications, and other information via their smartphones has become a necessity, not a convenience. In contrast to the largely stationary internet of the early 2000s, Americans today are increasingly connected to the world of digital information while "on the go" via smartphones.

5. Indeed, a growing share of Americans use smartphones as their primary means of online access at home. Today roughly one-in-five American adults are "smartphone-only" internet users-meaning they own a smartphone, but do not have traditional home broadband service.

6. The growth of smartphone usage is rivaled only by the myriad ways in which users can harness the capabilities of the internet for the betterment of their lives through education, employment, entertainment, commerce, and countless other pursuits.

7. The U.S. Chamber of Commerce has documented consumers' increasing reliance on mobile platforms to shop online:

> The average consumer spends more than $1,700 per year on online shopping, a number that's continuing to rise. The convenience, affordability and ability to compare prices with ease has led more and more customers to visit e-commerce sites before heading to a brick-and-mortar location.
>
> New research by Leanplum found that 95% of consumers will buy at least half of their gifts online. Shoppers, especially millennials and Gen Zers, favor the convenience and the great offers and discounts associated more with shopping online than visiting a brick-and-mortar location. It's these groups that are driving e-commerce retailers to be strategic with their website design. The Leanplum survey found that 80% of respondents shop on their mobile devices

8. Plaintiff ANGEL JENKINS is a resident of New York, New York, and is legally blind due to Retinitis Pigmentosa, a progressive retinal degenerative disease that causes severe visual field constriction and substantial central vision loss.

9. Due to her permanent and progressive visual impairment, Ms. Jenkins relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions. Her reliance on assistive technology is essential to her ability to access goods and services on equal terms with sighted consumers. NVDA's ability to interpret properly coded website is critical to her independence, safety, and daily functioning.

10. This is a civil rights class action arising from Defendant's failure to design, construct, maintain, and operate the EcoNugenics and ThermaCare Websites (collectively, the "Websites") to be fully accessible to and independently usable by Plaintiff and other blind and visually impaired persons who use screen-reading software. Defendant's failures violate Title III of the ADA, 42 U.S.C. §§ 12181 et seq., the NYSHRL, the NYCRL, the NYCHRL, and the Declaratory Judgment Act.

11. Bridges Consumer Healthcare LLC is a Chattanooga, Tennessee-based consumer healthcare company established in 2020 by Charlesbank Capital Partners. Bridges was formed

concurrently with its acquisition of the North American rights to ThermaCare from GSK Consumer Healthcare. Bridges subsequently acquired Clarion Brands and most recently completed the acquisition of EcoNugenics, a portfolio of nutritional supplements. Bridges thus owns, operates, and controls both the EcoNugenics and ThermaCare brands, their respective product lines, and their respective e-commerce Websites.

12. Defendant is a "place of public accommodation" as defined by the ADA because it owns, operates, and controls commercial e-commerce websites through which Defendant's EcoNugenics and ThermaCare brands sell goods and services to the general public throughout the United States, including within the State and City of New York. Each Website constitutes a sales establishment within the meaning of 42 U.S.C. § 12181(7).

13. Defendant's Websites contains pervasive, systemic accessibility barriers that deny blind and visually impaired users full and equal access to the goods, services, information, and purchasing functions available to sighted users. The pervasive accessibility barriers on these Websites prevent Plaintiff and other legally blind individuals from independently browsing, researching, comparing, and purchasing products, thereby denying them the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and accommodations in violation of applicable federal, state, and city law.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under Title III of the ADA, 42 U.S.C. §§ 12181 et seq., and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

15. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as

Plaintiff's federal claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, accessed the Websites from this District, and suffered the injuries alleged herein in this District.

17. Defendant is subject to personal jurisdiction in this District because Defendant, through its EcoNugenics and ThermaCare brands, transacts substantial business in New York, maintains commercial websites accessible to and actively marketed at New York residents, ships products to customers in New York, and has derived substantial revenue from consumers in the State and City of New York. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

## PARTIES

18. Plaintiff ANGEL JENKINS is a legally blind individual residing in New York, New York 10027, within the Southern District of New York.

19. As documented in a Report of Legal Blindness (OCFS-4599) completed on April 12, 2025, by Dr. Robert Friedman, M.D., O.D., an Ophthalmologist at Mount Sinai Morningside, located at 1001 Park Avenue, New York, New York 10028, Ms. Jenkins has been diagnosed with Retinitis Pigmentosa. Retinitis Pigmentosa is a progressive, hereditary retinal degenerative disease that causes the gradual destruction of photoreceptor cells in the retina, resulting in severe visual field loss, night blindness, and ultimately profound central visual impairment. Ms. Jenkins has been registered with the New York State Commission for the Blind and Visually Handicapped ("CBVH") under Registration No. A. ________ **(REDACTED)**

20. As a direct consequence of her disability, Plaintiff is substantially limited in the

major life activity of seeing and is unable to perceive, interpret, or interact with visual content on websites and digital platforms without the assistance of screen-reading technology.

21. Plaintiff uses NVDA (NonVisual Desktop Access), a widely recognized free, open-source screen reader for Microsoft Windows, as her primary assistive technology to access websites and digital content. NVDA converts on-screen text, images (when properly labeled with alternative text), links, buttons, form fields, and other interactive elements into synthesized speech, enabling blind and visually impaired users to navigate and interact with websites.

22. For NVDA to function effectively, websites must comply with the Web Content Accessibility Guidelines ("WCAG") 2.1, at minimum Level AA, as published by the World Wide Web Consortium ("W3C") and referenced by the United States Department of Justice for compliance with ADA Title III. Compliance requires, inter alia, that all images contain descriptive alternative text, all form controls be properly labeled, all interactive elements be keyboard-operable and have accessible names, sufficient color contrast exist between text and background, headings be used to structure content, and ARIA roles and properties be implemented correctly.

23. Defendant BRIDGES CONSUMER HEALTHCARE, LLC is a limited liability company organized and existing under the laws of the State of Tennessee, with its principal place of business at Chattanooga, Tennessee. Bridges was formed in 2020 as a portfolio company of Charlesbank Capital Partners, focused on acquiring and building a market-leading consumer healthcare platform. Bridges owns and controls both the EcoNugenics and ThermaCare consumer brands, their respective product lines, and their respective e-commerce Websites, and accordingly bears responsibility for the accessibility of those Websites under the ADA and applicable state and city law.

24. EcoNugenics is a nutritional supplement brand acquired by Bridges Consumer

Healthcare. EcoNugenics operates the e-commerce Website at https://econugenics.com, through which it sells physician-formulated dietary supplements—including the PectaSol Modified Citrus Pectin and BreastDefend product lines—to consumers throughout the United States, including New York.

25. ThermaCare is a consumer healthcare brand that Bridges Consumer Healthcare acquired from GSK Consumer Healthcare in November 2020. ThermaCare operates the e-commerce Website at https://www.thermacare.com, through which it sells its portfolio of clinically proven heat wraps—including the Back Pain Therapy HeatWraps and Neck, Shoulder & Wrist Pain Therapy HeatWraps—to consumers throughout the United States, including New York.

## STATEMENT OF FACTS

### A. Plaintiff's Disability and Use of Assistive Technology

26. Plaintiff ANGEL JENKINS is an active online consumer who regularly uses her NVDA screen reader to browse, research, compare, and purchase products from e-commerce websites. Ms. Jenkins maintains a genuine, continuing interest in purchasing health and wellness products online, including nutritional supplements and therapeutic pain relief products that address her personal health needs as a legally blind individual with Retinitis Pigmentosa.

### B. Plaintiff's Attempted Access to the EcoNugenics Website and Barriers Encountered

27. Plaintiff first learned of EcoNugenics through a recommendation from her physician, Dr. Robert Friedman, who advised her that PectaSol Modified Citrus Pectin—a flagship supplement sold exclusively on the EcoNugenics Website—may support cellular and organ health in patients with progressive retinal conditions including Retinitis Pigmentosa. Motivated by her physician's recommendation and her desire to support her own health, Ms. Jenkins visited the

EcoNugenics Website at https://econugenics.com to research and purchase EcoNugenics products.

28. On January 14, 2026, Ms. Jenkins first accessed the EcoNugenics Website using her NVDA screen reader with the intent to browse and purchase the PectaSol-C Modified Citrus Pectin Capsules (the "PectaSol Capsules"), a professionally formulated dietary supplement sold on the EcoNugenics Website at https://econugenics.com/products/pectasol-capsules. On this page, NVDA encountered critical accessibility barriers: (a) an ARIA role=button element on the page was empty and had no accessible name, causing NVDA to announce only "button" with no description of the button's function—specifically, this barrier appeared on the homepage at line 3965 as documented in the EcoNugenics Accessibility Report; (b) images throughout the site, including product images of the PectaSol Capsules, lacked proper alt text, with 52 pages containing images with no accessible name, causing NVDA to read out raw filenames as meaningless strings; and (c) on 85 pages including the EcoNugenics product pages, links used only a text color change to signal interactivity, providing no visual cue discernible to screen reader users for color-blind or blind navigation. Ms. Jenkins was unable to independently navigate to the product, review product descriptions, or complete her purchase.

29. On February 3, 2026, Ms. Jenkins returned to the EcoNugenics Website to make a second attempt to purchase the PectaSol Capsules, and also to research and purchase BreastDefend (the "BreastDefend Capsules"), a proprietary supplement formulated to support breast cellular health and immune function sold at https://econugenics.com/products/breastdefend, which Ms. Jenkins sought to purchase for ongoing preventive health support recommended by her physician. On this visit, the identical barriers persisted: (a) on four pages, NVDA encountered elements with aria-hidden=true that contained focusable content—specifically, hidden elements containing

focusable button, input, select, and textarea controls—causing NVDA to fail to voice essential content while still allowing keyboard focus to land on those elements, disorienting Ms. Jenkins and preventing her from reliably activating product controls; (b) on one page, an element with role=listitem was used outside a role=list parent element, specifically on the product page at https://econugenics.com/products/pectasol-hand-mixer (line 2307, 2331), causing NVDA to misread the structural relationship of product listing elements; and (c) on 437 pages, links lacked any accessible name, meaning that when Ms. Jenkins used NVDA's link navigation shortcut (pressing the K key to cycle through links), NVDA read the raw URL strings rather than meaningful link text, providing no indication of the links' destinations. Ms. Jenkins was again unable to complete either purchase.

30. On March 5, 2026, Ms. Jenkins made a third and final attempt to access the EcoNugenics Website, navigating specifically to the PectaSol Capsules product page and the BreastDefend product page. The same systemic barriers remained unremediated. In total, the EcoNugenics Accessibility Report documented: 15 Level A WCAG violations across 548 pages; images without accessible names across 52 pages; unnamed links across 437 pages; generic "click here" and "Buy Now" link text without descriptive context on 4 pages; aria-hidden elements containing focusable content on 1 page; ARIA role=button elements with no accessible name on 1 page; and links using only color change to signal interactivity on 85 pages. Out of 4,158 total pages and files checked, 1,021 pages had accessibility problems—rated worse than average—and 1,020 pages had W3C standards issues. Each of these barriers individually, and collectively, made it impossible for Ms. Jenkins to independently use the EcoNugenics Website to find, research, and purchase the PectaSol Capsules and BreastDefend Capsules she sought.

### C. **<u>Plaintiff's Attempted Access to the ThermaCare Website and Barriers Encountered</u>**

31. Plaintiff learned of ThermaCare heat wraps through her personal healthcare provider, who recommended therapeutic heat therapy as a non-pharmacological treatment for chronic neck and back discomfort associated with the physical strain of prolonged computer use—a necessity Ms. Jenkins has as a blind individual who must rely extensively on her computer and assistive technology for daily activities. Ms. Jenkins specifically sought ThermaCare products because ThermaCare is a clinically proven, physician-recommended brand sold by Defendant Bridges Consumer Healthcare—the very entity that also owns EcoNugenics, whose products she was simultaneously trying to access.

32. On January 22, 2026, Ms. Jenkins first accessed the ThermaCare Website at https://www.thermacare.com using her NVDA screen reader with the intent to browse and purchase ThermaCare Back Pain Therapy HeatWraps (the "Back Pain HeatWraps") and ThermaCare Neck, Shoulder & Wrist Pain Therapy HeatWraps (the "Neck & Shoulder HeatWraps"). On the "Where to Buy" product pages, NVDA immediately encountered a critical barrier: multiple product listing images contained alt text set to 'icon'—specifically at lines 700 and 386 on https://www.thermacare.com/where-to-buy/?product_id=0573-3017-24V, https://www.thermacare.com/where-to-buy/?product_id=0573-3040-20, and https://www.thermacare.com/where-to-buy/?product_id=0573-3040-23 —as documented in the ThermaCare Accessibility Report (WCAG 2.1 A F30, Section 508 (2017) A F30). NVDA dutifully read these meaningless placeholder values aloud as "icon," providing no useful information to Ms. Jenkins about the product images being displayed. Additionally, across 32 pages of the ThermaCare Website, links used only a text color change to signal interactivity, with no additional visual or programmatic cue that would work for a blind user navigating by screen reader (WCAG 2.1 A F73, Section 508 (2017) A F73), violating the requirement that links be

distinguishable through means other than color alone.

33. On February 18, 2026, Ms. Jenkins returned to the ThermaCare Website to make a second attempt to purchase the Back Pain HeatWraps and Neck & Shoulder HeatWraps. On this visit she encountered the persistent and unremediated barrier that across 32 pages—including the main product page at https://www.thermacare.com/, the FAQ page at https://www.thermacare.com/faq/, the general heat wraps page at https://www.thermacare.com/heat-wraps/, the arthritis pain therapy page, the back pain therapy page, the joint pain therapy page, the knee pain therapy page, and the pain management category page—"Buy Now" and "Learn More" link texts appeared without any surrounding descriptive text to explain the link purpose (WCAG 2.1 A F63, Section 508 (2017) A F63, lines 1168, 1450 on the homepage, and line 325 on the FAQ page, among many others). When Ms. Jenkins navigated using NVDA's link shortcut key, NVDA announced "Buy Now" with no contextual information indicating which product would be purchased, making it impossible for her to make an informed purchasing decision or confirm she was purchasing the specific product she desired. She was further impeded by the presence of 13 pages containing links with no accessible name whatsoever, where NVDA had nothing to read and was forced to announce the raw URL (WCAG 2.1 A F89, Section 508 (2017) A F89), including on the main https://www.thermacare.com/ homepage, the pain management category page, and multiple heat wrap pages. Ms. Jenkins could not complete either purchase.

34. On March 19, 2026, Ms. Jenkins made a third visit to the ThermaCare Website, again navigating to the Back Pain HeatWraps product page and the Neck & Shoulder HeatWraps product page. All barriers remained unremediated. The ThermaCare Accessibility Report documented a total of 9 Level A violations across 32 pages: (a) alt text set to placeholder values

like "icon" on 4 pages; (b) links using only color change to signal interactivity on 32 pages; (c) generic "Buy Now"/"Learn More" link text with no surrounding context on 32 pages; (d) links with no accessible name on 13 pages; and related barriers affecting Ms. Jenkins's ability to independently navigate, compare, and purchase ThermaCare products. Ms. Jenkins was forced to abandon her shopping sessions without making any purchase.

**D. <u>Standing — Plaintiff's Genuine Interest and Intent to Return</u>**

35. Under *Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68 (2d Cir. 2022), and *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013), Plaintiff has standing to bring this action for injunctive relief based on three factors: (1) past injury under the ADA; (2) reasonable inference that discriminatory treatment will continue; and (3) reasonable inference, based on the past frequency of Plaintiff's visits and the nature of Plaintiff's genuine interest in Defendant's specific products, that Plaintiff intends to return.

36. As to the first factor, Plaintiff suffered concrete, particularized injury-in-fact on each of her six documented visits to the two Websites: on January 14, 2026, February 3, 2026, and March 5, 2026, to the EcoNugenics Website, and on January 22, 2026, February 18, 2026, and March 19, 2026, to the ThermaCare Website. On each occasion, Plaintiff attempted to perform specific tasks—reviewing product descriptions, selecting product quantities, and adding products to her shopping cart—and was denied the ability to do so due to documented, concrete accessibility barriers.

37. Plaintiff's specific interest in Defendant's products is genuine, particular, and motivated by concrete personal need—not a fabricated or manufactured interest. With respect to EcoNugenics, Ms. Jenkins sought to purchase the PectaSol-C Modified Citrus Pectin Capsules because her treating physician Dr. Robert Friedman of Mount Sinai Morningside specifically

recommended modified citrus pectin supplementation in connection with her Retinitis Pigmentosa diagnosis to support cellular health. PectaSol is EcoNugenics's flagship product, backed by over 200 peer-reviewed studies and sold directly on the EcoNugenics Website. Ms. Jenkins additionally sought to purchase BreastDefend Capsules for ongoing preventive health support—a supplement targeting breast cellular health and immune function—as part of the wellness regimen she manages with the guidance of her physician. Neither product is readily substituted with an equivalent from a different retailer offering a fully accessible purchase pathway; PectaSol is the original, proprietary modified citrus pectin product, and the specific formulations sold on the EcoNugenics Website are physician-grade.

38. With respect to ThermaCare, Ms. Jenkins sought specifically to purchase the ThermaCare Back Pain Therapy HeatWraps and the Neck, Shoulder & Wrist Pain Therapy HeatWraps because ThermaCare is the only clinically proven, physician-recommended heat wrap brand that her healthcare provider endorsed by name. ThermaCare is owned by Defendant Bridges Consumer Healthcare, the same corporate entity that owns EcoNugenics, making the ThermaCare Website a directly associated Website of Defendant. Ms. Jenkins chose ThermaCare heat wraps specifically because of their documented clinical efficacy and physician endorsement, and she has no equivalent substitute available through an accessible website.

39. As to the second factor, it is reasonable to infer that the discriminatory barriers will continue. The EcoNugenics and ThermaCare Websites remain inaccessible as of the filing of this Complaint: both Accessibility Reports are recent (April 10, 2026), the violations are systemic and pervasive (documented across hundreds and dozens of pages respectively), and Defendant has taken no steps to remediate the reported barriers despite having had ample notice.

40. As to the third factor, Plaintiff has expressed a definitive intent to return to both

Websites once the accessibility barriers are remediated. Plaintiff's intent is not speculative or conditional in the way courts found insufficient in *Calcano;* it is grounded in specific, ongoing personal health needs that will not abate, specific products she identified and desires to purchase, a physician's recommendation driving her interest in EcoNugenics products, and a specific therapeutic use case driving her interest in ThermaCare products. Unlike the *Calcano* plaintiffs whose allegations were entirely conclusory, Plaintiff here provides the specificity required: she identifies the exact products she sought (PectaSol Capsules and BreastDefend for EcoNugenics; Back Pain HeatWraps and Neck & Shoulder HeatWraps for ThermaCare), the exact pages she visited, the exact barriers she encountered at specific line numbers on specific pages, the exact dates of her attempted visits, and the exact reason she chose each product. Once the barriers are remediated, Ms. Jenkins will return to purchase the PectaSol Capsules and BreastDefend Capsules she has been unable to acquire and will purchase the ThermaCare Back Pain HeatWraps and Neck & Shoulder HeatWraps she has sought for therapeutic use. Her desire to return is genuine, continuing, and fully consistent with the injury she has suffered. See *Guerrero v. Ogawa USA Inc.,* 2023 U.S. Dist. LEXIS 109579 (S.D.N.Y. 2023) (intent to return prong met where plaintiff identified specific products desired and specific barriers encountered on specific product pages).

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of herself and a class of all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

42. The proposed Nationwide Class is defined as: All legally blind individuals in the United States who have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's Websites (https://econugenics.com and https://www.thermacare.com) due to Defendant's failure to design, construct, maintain, and operate those Websites to be fully accessible to and independently usable by blind and visually

impaired persons who use screen-reading software, during the applicable statute of limitations period.

43. The proposed New York Sub-Class is defined as: All legally blind individuals in the State of New York who have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's Websites due to accessibility barriers during the applicable statute of limitations period.

44. Numerosity (Fed. R. Civ. P. 23(a)(1)): The proposed class and sub-class are so numerous that joinder of all members is impracticable. According to the National Federation of the Blind, approximately 7.6 million Americans are visually impaired, and approximately 1.3 million are legally blind. A significant number of legally blind individuals use screen-reading software to access e-commerce websites and have encountered or will encounter the barriers on Defendant's Websites.

45. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist for all class members, including: (a) whether the Websites are "places of public accommodation" under the ADA; (b) whether the Websites deny blind and visually impaired individuals full and equal access to goods and services; (c) whether Defendant has failed to take steps to make the Websites accessible in violation of the ADA, NYSHRL, NYCRL, and NYCHRL; and (d) whether Defendant's conduct constitutes discrimination under applicable law.

46. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of those of the class. Like all class members, Plaintiff is a legally blind individual who relies on screen-reading software and has been denied full and equal access to Defendant's Websites due to systemic, uniform accessibility barriers.

47. Adequacy (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately protect the

interests of the class. Plaintiff has retained counsel experienced in ADA accessibility litigation and has no interests antagonistic to those of the class.

48. Injunctive Relief Class (Fed. R. Civ. P. 23(b)(2)): Defendant has acted on grounds generally applicable to the class, making appropriate final injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole. The accessibility barriers on Defendant's Websites uniformly affect all blind and visually impaired users.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Title III of the Americans with Disabilities Act
### (42 U.S.C. §§ 12181 et seq.)

49. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

50. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

51. Defendant's Websites are each a "place of public accommodation" within the meaning of 42 U.S.C. § 12181(7)(E)-(F), as each constitutes a sales establishment and service establishment.

52. Defendant has discriminated against Plaintiff and members of the class by failing to design, construct, maintain, and operate its Websites to be fully accessible to and independently usable by blind and visually impaired individuals, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). The documented WCAG violations constitute a failure to provide auxiliary aids and services necessary to ensure effective communication with persons with disabilities.

53. Unless the Court enjoins Defendant from continuing these unlawful practices,

Plaintiff and class members will continue to suffer irreparable harm. Plaintiff is entitled to injunctive relief requiring Defendant to bring both Websites into full compliance with WCAG 2.1 Level AA, and to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**
**Violation of the New York State Human Rights Law**
**(N.Y. Exec. Law §§ 290 et seq.)**

54. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

55. The NYSHRL provides that "[n]o person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation ... shall directly or indirectly refuse, withhold from or deny to any person ... any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

56. Defendant's Websites constitute places of public accommodation within the meaning of the NYSHRL. Defendant has violated the NYSHRL by failing to make its Websites accessible to Plaintiff and other blind and visually impaired individuals, thereby denying them full and equal enjoyment of the goods, services, and accommodations available through those Websites.

57. ]Plaintiff is entitled to compensatory damages, injunctive relief, and reasonable attorneys' fees and costs under the NYSHRL.

**THIRD CAUSE OF ACTION**
**Violation of the New York State Civil Rights Law**
**(N.Y. Civ. Rights Law §§ 40 et seq.)**

58. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

59. The NYCRL provides that "[a]ll persons within the jurisdiction of this state shall

be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement." N.Y. Civ. Rights Law § 40.

60. Defendant has violated the NYCRL by denying Plaintiff and other blind and visually impaired individuals full and equal access to the accommodations, advantages, facilities, and privileges of its Websites. Plaintiff is entitled to compensatory damages of not less than $500 per violation under N.Y. Civ. Rights Law § 40-d, as well as injunctive relief and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code §§ 8-101 et seq.)**

61. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

62. The NYCHRL provides broader protections than its federal and state counterparts, and shall be construed liberally to accomplish its remedial purposes. The NYCHRL prohibits discrimination in places of public accommodation and imposes an affirmative obligation on covered entities to provide full and equal access to persons with disabilities.

63. Defendant has violated the NYCHRL by failing to ensure that its Websites are accessible to and independently usable by blind and visually impaired individuals, thereby denying Plaintiff and other similarly situated individuals the full and equal enjoyment of Defendant's goods, services, and accommodations. Plaintiff is entitled to compensatory damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs under the NYCHRL.

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**
**(28 U.S.C. §§ 2201 et seq.)**

64. Plaintiff re-alleges and incorporates by reference all preceding allegations as

though fully set forth herein.

65. An actual, justiciable controversy exists between Plaintiff and Defendant concerning Defendant's obligations under the ADA, NYSHRL, NYCRL, and NYCHRL to make its Websites accessible to blind and visually impaired individuals.

66. Plaintiff is entitled to a declaratory judgment that Defendant's EcoNugenics Website and ThermaCare Website each violate the ADA, the NYSHRL, the NYCRL, and the NYCHRL due to their inaccessibility to blind and visually impaired individuals who rely on screen-reading technology, and that Defendant is obligated to remediate these Websites in compliance with WCAG 2.1 Level AA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Bridges Consumer Healthcare, LLC, and grant the following relief:

- Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2), appoint Plaintiff ANGEL JENKINS as class representative, and appoint Plaintiff's counsel as class counsel;
- Issue a permanent injunction requiring Defendant to design, construct, maintain, and operate both the EcoNugenics Website (https://econugenics.com) and the ThermaCare Website (https://www.thermacare.com) in full compliance with WCAG 2.1 Level AA, the ADA, and all applicable accessibility standards, including but not limited to: (i) adding accessible names and meaningful alt text to all images, buttons, and form controls; (ii) removing meaningless placeholder alt text (such as "icon") from all product images; (iii) ensuring all interactive elements are keyboard-operable and properly voiced by screen readers; (iv) providing sufficient color contrast between text and background; (v) using descriptive, non-generic link text or aria-labels on all links; (vi) properly implementing ARIA roles, states, and properties; and (vii) retaining an

independent accessibility consultant to conduct periodic audits and produce written remediation reports;

- Award Plaintiff and the class compensatory damages, including statutory damages of not less than $500 per violation under the NYCRL;
- Award Plaintiff and the class punitive damages as permitted by applicable law;
- Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and applicable state and city law;
- Issue a declaratory judgment that Defendant's EcoNugenics Website and ThermaCare Website each violate the ADA, the NYSHRL, the NYCRL, and the NYCHRL;
- Award pre-judgment and post-judgment interest; and
- Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: New York, New York
April 21, 2026

Respectfully submitted,
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
JOSEPH NORINSBERG, LLC
Attorneys for Plaintiff
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com